# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WILLIAM SATTERFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-03-TCK-FHM |
| | ) | |
| PATRICK J. MALLOY, III; JOHN DOE; and | ) | |
| RICHARD ROE, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is Defendant Patrick J. Malloy, III's ("Defendant") Motion to Dismiss (Doc. 5).

## I. Background

The following facts are alleged in Plaintiff William Satterfield's ("Plaintiff") Complaint. In June 2004, Plaintiff entered a plea to certain criminal charges in federal court and, as a result, was sentenced to a term of imprisonment and ordered to pay restitution in an amount up to 1.7 million dollars. Plaintiff thereafter consulted various attorneys, including Defendant, regarding the manner and method to administer his estate in order to fulfill his restitution obligation. Plaintiff alleges that the purpose of consulting with Defendant "was to evaluate [his] estate to ascertain if there existed circumstances that would warrant administering [the] estate through Chapter 11 of the Bankruptcy Code." (Compl. ¶ 9.) Plaintiff provided copies of his financial records to Defendant as part of the consultation, but, in the end, Defendant declined to represent Plaintiff in any subsequent bankruptcy proceeding.

On August 16, 2004, Plaintiff filed a voluntary petition for bankruptcy under Chapter 11. In January 2005, the Office of the United States Trustee sought to have Defendant appointed as the

trustee for Plaintiff's estate. Defendant obtained a statement from Plaintiff's attorney that Plaintiff did not object to the appointment. Plaintiff contends, however, that he was not fully advised of the potential areas of conflict that might arise as a result of Defendant acting as trustee of the estate. Defendant was thereafter appointed as trustee for Plaintiff's Chapter 11 bankruptcy proceeding.

On February 23, 2006, the bankruptcy court converted Plaintiff's Chapter 11 bankruptcy proceeding to a Chapter 7 bankruptcy proceeding, which was opposed by Plaintiff. Defendant continued serving as trustee of the new Chapter 7 bankruptcy estate. On March 1, 2006, Defendant, acting in his capacity as trustee, filed an application to be appointed attorney for the estate, which was granted by the bankruptcy court. A few months later, in June 2006, Plaintiff filed a motion seeking to disqualify Defendant as trustee and attorney for the estate. Plaintiff contends that the motion directly raised the issue of "whether Defendant . . . had violated certain provisions of the Bankruptcy Code" and raised "by implication questions of whether Defendant . . . had violated his professional ethics." (*Id.* ¶ 22.)

Plaintiff alleges that as a result of his motion, "[Defendant] engaged in a continuous course of conduct between 2006 and 2008 designed to retaliate against [Plaintiff] for having raised an objection to [Defendant's] status as trustee and attorney for the [estate]." (*Id.* ¶ 25.) Specifically, Plaintiff contends that Defendant: (1) took actions to deliberately dissipate the value of the estate; (2) failed and refused to report the rents received as income, causing Plaintiff to be assessed penalties and interest by the Internal Revenue Service; (3) allowed foreclosure on certain properties rather than "making a good faith effort to sell the property," (*id.* ¶ 25(c)); (4) failed to adequately provide for the upkeep on property of the estate; (5) failed to preserve the value of the property subject to foreclosure; (6) failed to preserve and/or prosecute a claim of reverse condemnation

against the City of Tulsa; and (7) failed to exercise reasonable care in renting certain property to an individual who engaged in illegal activity on the property. (*See id.* ¶ 25 (a)-(g).)

As a result of the above alleged actions, Plaintiff brought the following claims against Defendant: (1) violation of 42 U.S.C. § 1985(2); (2) violation of his First and Fifth Amendment Rights pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1071) ("*Bivens* claim"); (3) breach of fiduciary duty; and (4) civil conspiracy. Defendant has moved to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

## II.     Motion to Dismiss Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 550 U.S. at 570). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it

3

innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context," and that whether a defendant receives fair notice "depends on the type of case." *Id.*

### III. Analysis

In support of his Motion to Dismiss, Defendant first argues that because Plaintiff did not obtain leave from the bankruptcy court prior to initiating this lawsuit, all claims against him must be dismissed pursuant to *Barton v. Barbour*, 104 U.S. 126 (1881). *Id.* at 127-28 (requiring leave of the bankruptcy court before a party can institute an action against a trustee for acts done in the trustee's official capacity ("*Barton* doctrine")). Plaintiff argues that this case fits into two exceptions to the *Barton* doctrine: (1) the *ultra vires* exception; and (2) the exception found in 28 U.S.C. § 959(a) ("Section 959(a)").[1]

---

[1] Defendant sets forth other arguments in support of the Motion to Dismiss. Specifically, Defendant contends that: (1) Plaintiff's allegations are insufficient to make a claim under Section 1985(2); (2) Plaintiff fails to state a *Bivens* claim because Defendant is immune from suit; (3) Plaintiff fails to state a claim for breach of fiduciary duty because Defendant does not owe a fiduciary obligation to Plaintiff; and (4) Plaintiff fails to state a claim for civil conspiracy because there are insufficient facts supporting such a claim. Finally, Defendant also argues that Plaintiff's Complaint should be dismissed because the claims are barred by the statutes of limitation and the doctrines of issue preclusion and claim preclusion. Because the Court finds the *Barton* doctrine applicable, it does not reach these arguments.

### A. *Barton* Doctrine

In *Barton v. Barbour*, 104 U.S. 126, 127-28 (1881), the Supreme Court ruled that common law barred suits against receivers in courts other than the court charged with the administration of the estate. Specifically, the Supreme Court held that before a person can sue a receiver, he must obtain leave from the court that appointed the receiver. *See id.* at 128. Although "*Barton* involved a receiver in state court, [t]he circuit courts have extended the *Barton* doctrine to lawsuits against a bankruptcy trustee." *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000). Thus, in the case of a bankruptcy trustee, such as Defendant, "leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court." *In re De Lorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing, *inter alia*, *Barton*); *see also Strand v. Loveridge*, No. 2:07-cv-00576-DAK, 2008 WL 893004, at *2 (D. Utah March 28, 2008) ("A party must first obtain leave from the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity."). The policy behind the *Barton* doctrine was outlined by the Seventh Circuit in *Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998):

> If [the trustee] is burdened with having to defend against suits by litigants disappointed with his actions on the court's behalf, his work for the court will be impeded. . . . Without the requirement [of leave], trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive. . . . Furthermore, requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively.

*See also Collier on Bankruptcy*, ¶ 323.03[3][a] ("The justification [behind the *Barton* doctrine] is that the court that appointed the trustee has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties.").

### 1. <u>*Ultra Vires* Exception to *Barton* Doctrine</u>

*Barton* provides that "if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefore against him personally as a matter of right; for in such case the receiver would be acting *ultra vires*." *Barton*, 104 U.S. at 134. Based on this language, courts have found an exception to the *Barton* doctrine when a trustee acts outside the scope of his authority. This most commonly occurs when a trustee has wrongfully seized assets from a third party. *See Teton Millwork Sales v. Schlossberg*, No. 07-8091, 2009 WL 323141, at *2 (10th Cir. Feb. 10, 2009) (finding case fell "squarely within [the] ultra vires exception to the *Barton* doctrine" because plaintiff, an outside party, alleged that receiver exceeded his authority by wrongfully seizing its assets); *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967) ("It follows . . . that a trustee wrongfully possessing property which is not an asset of the estate may be sued for damages arising out of his illegal occupation in a state court without leave of his appointing court.") (finding third party could pursue action in state court against trustee without obtaining prior approval from bankruptcy court when trustee wrongfully took possession of third party's real property by forcible entry and without court order); *In re Weisser Eyecare, Inc.*, 245 B.R. 844, 851 (N.D. Ill. 2000) ("Courts which have held trustees personally liable for actions taken outside the scope of their authority, have mainly done so in matters involving a trustee's mistaken seizure of property not property of the estate, or other similar actions."); *In re Markos Gurnee P'ship*, 182 B.R. 211, 217

(N.D. Ill. 1995) ("The situation in which trustees have been most commonly found to have acted outside of their authority is in seizing property which is found not to be property of the estate.").

Plaintiff argues that this case falls within the *ultra vires* exception to the *Barton* doctrine because Defendant's actions, "taken in retaliation for Plaintiff lawfully objecting to the trustee's appointment, are unofficial acts outside his authority." (Pl.'s Supplemental Resp. Br. 2.) The Court rejects this contention. First, as noted above, the *ultra vires* exception has most commonly been applied when a trustee wrongfully seizes property of a third party, which has not occurred here. Further, there is a presumption that "acts were a part of the trustee's duties unless [a] [p]laintiff initially alleges at the outset facts demonstrating otherwise." *Lowenbraun v. Canary*, 453 F.3d 314, 322 (6th Cir. 2006) (citing *In re Heinsohn*, 247 B.R. 237, 246 (E.D. Tenn. 2000)). Although Plaintiff attempts to couch Defendant's alleged acts as outside the scope of his authority as trustee, Plaintiff has not asserted any facts overcoming this presumption. In fact, a review of the Complaint demonstrates that the actions complained of by Plaintiff were taken by Defendant while administering and liquidating the bankruptcy estate, (*see* Compl. ¶ 25 (a)-(g)), rendering this exception inapplicable. *See In re Triple S. Rests.,* 519 F.3d 575, 578 (6th Cir. 2008) (affirming district court's finding that trustee acted within scope of authority because plaintiff's allegations concerned actions taken by trustee – namely, statements made in negotiations – in recovering assets for the estate); *Carter*, 220 F.3d at 1253 (affirming district court's application of *Barton* doctrine when plaintiff's breach of fiduciary duty claim against trustee and trustee's agents stemmed from actions taken in sale of property belonging to bankruptcy estate); *Giovanazzi v. Schuette*, No. 09-0496 AHM (PLAx), 2009 WL 649187, at *4 (C.D. Cal. March 10, 2009) (finding alleged actions were not *ultra vires* when allegations "[arose] directly from, and [were] based entirely on,

7

[defendants'] actions as bankruptcy trustee and trustee's counsel"); *Novak v. Clark*, No. 03-4136, 2004 WL 1293249, at *2 (D. Kan. June 4, 2004) (dismissing complaint pursuant to *Barton* doctrine because plaintiffs did not seek leave of bankruptcy court before filing suit and complaint "challenge[d] the trustee's actions taken while administering or liquidating the bankruptcy estate").

Finally, the Court additionally rejects Plaintiff's contention that because the allegations of the Complaint allege unlawful and improper acts, this necessarily brings the allegations outside the scope of Defendant's authority. (*See* Resp. to Mot. to Dismiss 5 (arguing that because the Complaint alleges that Defendant retaliated against Plaintiff in violation of federal statutes and the U.S. Constitution, the Complaint "clearly allege[s] unlawful actions which were beyond the scope of authority of Defendant").) Because the essence of such allegations relates to Defendant's execution of his duties as trustee, the *ultra vires* exception does not apply. *See Lawrence v. Goldberg*, 573 F.3d 1265, 1271 (11th Cir. 2009) (looking at the "essence of" plaintiff's complaint and finding that plaintiff's claims – asserting that trustee's actions violated federal wiretapping laws, the Racketeer-Influenced Corrupt Organizations Act, the Fair Debt Collection Practices Act, and federal and constitutional rights under 42 U.S.C. § 1983 and *Bivens* — fell within scope of *Barton* doctrine because they were all related to plaintiff's bankruptcy proceeding); *Lowenbraun*, 453 F.3d at 322 (finding plaintiff's allegation that trustee's actions were prompted by improper motives insufficient to undermine application of *Barton* doctrine to plaintiff's claims of libel, slander, abuse of process, wrongful use of civil proceedings, and tort of outrage); *Lickman v. Lickman*, 297 B.R. 162, 204-05 (M.D. Fla. 2003) (rejecting debtor's argument that because the action alleged fraud and conspiracy of the trustee and her counsel in the sale of the probate asset, they were *ultra vires* actions outside the scope of the *Barton* doctrine).

2. 28 U.S.C. § 959

Section 959(a) serves as an additional limited exception to the *Barton* doctrine, "allowing suits against the trustee for actions taken while 'carrying on business.'" *In re De Lorean Motor Co.*, 991 F.2d at 1240-41. Specifically, Section 959(a) states as follows:

> Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

The Eleventh Circuit has explained that Section 959(a) was intended to "permit actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store." *Carter*, 220 F.3d at 1254 (internal citation omitted). "This exception does not apply to suits against the trustee for actions taken while administering the estate," however. *In re De Lorean Motor Co.*, 991 F.2d at 1241. "Merely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted." *Id.* (internal quotations and citation omitted); *Carter*, 220 F.3d at 1254 ("Section 959(a) does not apply to suits against trustees for administering or liquidating the bankruptcy estate.").

The Court finds that Section 959(a) does not apply to the facts of this case. The allegations of Plaintiff's Complaint relate to Defendant's actions in the "fulfillment or non-fulfillment of his fiduciary responsibilities as trustee, as opposed to acts or transactions in the furtherance of [Plaintiff's] business." *Muratore v. Carr*, 375 F.3d 140, 145 (1st Cir. 2004) (finding Section 959(a) inapplicable on such a basis). Since the Complaint is based on Defendant's alleged misconduct in

9

administering and liquidating the estate's property, and not on tortious acts committed in furtherance of Plaintiff's business, this case falls outside of Section 959(a). *See Carter*, 220 F.3d at 1254 (finding Section 959(a) inapplicable when action was "for breach of fiduciary duty and involve[d] the [d]efendants' duties as they relate[d] to the administration and liquidation of [the] estate"); *In re Maxon Eng'g Servs., Inc.*, No. 04-04781, 2010 WL 529435, at *2 (D.P.R. Feb. 12, 2010) (finding Section 959(a) inapplicable when allegations against trustee focused on trustee's "negligence in the preservation of the estate and non compliance with [the trustee's] fiduciary responsibilities"); *Richman v. Batt*, 265 B.R. 416, 419 (E.D. Pa. 2001) (finding plaintiff's claims – which arose from defendant's alleged mishandling of the administration of the bankruptcy estate – did not "fit within the statutory exception" outlined in Section 959(a)).

Accordingly, because neither *Barton* exception is applicable to this case and it is undisputed that Plaintiff did not obtain leave from the bankruptcy court before filing suit, Plaintiff's claims are subject to dismissal pursuant to the *Barton* doctrine.

## IV. Unidentified Defendants

Plaintiff's Complaint names two unidentified individuals as Defendants – John Doe and Richard Roe. Plaintiff alleges that these two individuals "acted in concert with [Defendant]," (Compl. ¶ 2), and names them in his claim for violation of 42 U.S.C. § 1985(2), (*id.* ¶ 28). Because the identity of John Doe and Richard Roe is unknown, the Court cannot determine whether the Court's application of the *Barton* doctrine applies to Plaintiff's claim against these unidentified Defendants. This dismissal Order therefore does not extend to John Doe and Richard Roe.

However, because more than 120 days have elapsed since the filing of the Complaint without service being made on John Doe and Richard Roe, in the absence of justification for the failure, the

Complaint is subject to dismissal as to them under Federal Rule of Civil Procedure 4(m). Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."). The Court therefore orders Plaintiff to show cause why this action should not be dismissed as to John Doe and Richard Roe within fourteen (14) days of this Order. *See Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995) ("The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service.").

## V.     Conclusion

For the reasons outlined above, Defendant's Motion to Dismiss (Doc. 5) is GRANTED. Plaintiff is ordered to show cause within fourteen (14) days of this Order as to why this action should not be dismissed as to John Doe and Richard Roe for failure to timely effect service.

**SO ORDERED this 8th day of June, 2011.**

_____
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**